The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. A set of indexed medical records marked as exhibit 1 stipulated was received into evidence. (fifty-two pages)
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a thirty-nine year-old male who had obtained a G.E.D. while serving in the army.
2. At the time of the alleged injury by accident, plaintiff was employed by the defendant-employer as a supervisor in a garage located at a truckstop owned by the Worsley Company. Plaintiff's job duties included scheduling employees, ordering parts and supervising the mechanics in the garage. Plaintiff's job duties also included making efforts to generate work by talking to the drivers, and to promote a harmonious relationship with the truckstop and its agents.
3. Prior to April 21, 1994, defendant had specifically instructed plaintiff to do anything the truckstop needed for Trucker's Appreciation Day. Trucker's Appreciation Day was a social event sponsored by the truckstop to promote goodwill with customers of the truckstop as well as prospective customers. The promotion of this goodwill was intended to increase business for the truckstop.
4. Defendant-employer donated his own time to helping promote Trucker's Appreciation Day by cooking hot dogs and hamburgers throughout the day on April 21, 1994.
5. Eddie Mason, a mechanic for the defendant-employer, provided horses for customers to ride at Trucker's Appreciation Day. Eddie Mason supervised this activity during Trucker's Appreciation Day. Defendant-employer paid Eddie Mason for working on Trucker's Appreciation Day.
6. The defendant-employer directly benefited from increased business at the truckstop. Defendant-employer obtained many of its customers as a result of those customers buying goods and services at the truckstop.
7. During the week prior to Trucker's Appreciation Day, a dispute arose between plaintiff and the defendant. Plaintiff notified the defendant that he intended to quit. Plaintiff made plans to quit working for the defendant-employer at 3:00 p.m. on April 21, 1994. Plaintiff was to begin work for another employer the following week after April 21, 1994.
8. On April 21, 1994, defendant-employer specifically instructed plaintiff to hand out business cards during Trucker's Appreciation Day.
9. On April 21, 1994, plaintiff attempted to talk to the defendant-employer about his future job status with the defendant-employer. Defendant-employer told him that he would talk with him later because he was too busy cooking hot dogs and hamburgers. Plaintiff wanted to communicate to the defendant-employer that he did not want to quit his job.
10. Plaintiff had scheduled himself to work for the defendant-employer from 7:00 a.m. to 3:00 p.m. on April 21, 1994. Plaintiff arrived at the defendant-employer's place of business at 6:45 a.m.
11. During the morning of April 21, 1994, plaintiff transported Wayne Morton, owner of the truckstop, to pick up items for Trucker's Appreciation Day. During this trip, plaintiff agreed to help cook hot dogs and hamburgers during Trucker's Appreciation Day.
12. During the morning of April 21, 1994, plaintiff called Marshall Fisher and requested that he report to work. Pursuant to this request, Marshall Fisher did report to work in the garage on that date. Plaintiff requested that Marshall Fisher come into work so that plaintiff could assist in the promotion of Trucker's Appreciation Day.
13. Plaintiff was paid for working on April 21, 1994.
14. Plaintiff was wearing his company uniform on April 21, 1994.
15. Plaintiff distributed business cards for the defendant-employer to persons attending the events at Trucker's Appreciation Day.
16. Plaintiff served ice cream to the public and helped put popcorn into bags during Trucker's Appreciation Day.
17. Plaintiff was thrown from a horse at approximately 2:55 p.m. Plaintiff had not quit his job at the time that he was thrown from the horse.
18. Defendant-employer did not specifically instruct plaintiff to ride any horses. No one specifically requested that plaintiff ride any horses.
19. Plaintiff had observed that there was little participation at the horse ride event sometime shortly before 3:00 p.m. Plaintiff decided to ride one of the horses in order to create interest and participation in this activity from the customers attending Trucker's Appreciation Day.
20. Plaintiff rode the horse outside the designated area and to the grassy area toward Peter Road. He stopped near the sign on the edge of the truckstop premises near the sign displaying gas prices. On his way back to the designated area where the horse ride event was located, and while still on the truckstop premises, the horse was startled by a car and the horse threw plaintiff off its back. Plaintiff landed near the gas pumps at the truckstop.
21. The tossing of plaintiff off the horse's back on April 21, 1994 constitutes an interruption of his regular work routine and the introduction thereby of unusual circumstances likely to result in unexpected consequences.
22. As a result of the fall from the horse on April 21, 1994, plaintiff sustained a subarachnoid hemorrhage and post concussive syndrome.
23. As a result of the fall from the horse on April 21, 1994, plaintiff was unable to earn any wages from April 21, 1994 to August 13, 1994.
24. On August 14, 1994, plaintiff went back to work full-time for another employer earning wages in a greater amount than the wages that plaintiff was earning at the time of his injury.
25. Plaintiff is currently able to earn full-time wages. Plaintiff has made reasonable accommodations to be able to perform this job Vocational rehabilitation and speech therapy are not necessary to reduce plaintiff's disability at this time.
26. Psychological counseling is necessary for plaintiff to lessen his pain arising from the April 21, 1994 injury by accident.
27. Plaintiff will continue to need to take medications to reduce the pain from headaches caused by the April 21, 1994 injury by accident.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On April 21, 1994, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with the defendant-employer when he fell from a horse and sustained a subarabnoid hernia and post concussive syndrome. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to temporary total disability compensation at a rate of $300.15 for the time period beginning April 21, 1994 to August 14, 1994. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have the defendant provide all medical treatment arising from this injury by accident to the extent it tends or tended to effect a cure, give relief, or lessen plaintiff's disability. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay temporary total disability compensation at a rate of $300.15 per week for the time period beginning April 21, 1994 to August 14, 1994. This amount has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
2. Defendants shall pay all medical expenses incurred or to be incurred for the treatment of the post concussive syndrome and the subarachnoid hemorrhage caused by the April 21, 1994 injury by accident. Defendant shall pay all medical expenses incurred or to be incurred as a result of the April 21, 1994 injury by accident including psychological counseling. Defendants are not required to provide vocational rehabilitation until further order of the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel.
4. Plaintiff's claim for permanent partial disability, if any, is RESERVED.
5. Defendant shall pay expert witness fees in the amount of $175.00 to Dr. McDeavitt, $265.00 to Dr. Lyerly and $245.00 to Dr. Gross.
6. Defendant shall pay the costs.
 S/ __________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/cnp/rst